IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMED AL-ADAHI, *et al.*, ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No. 05-280 (GK) |
| ) | |
| GEORGE W. BUSH ) | |
| President of the United States, *et al.* ) | |
| ) | |
| Respondents. ) | |

**RESPONDENTS' PRELIMINARY OPPOSITION TO PETITIONER BAWAZIR'S
RENEWED EMERGENCY MOTION TO ENJOIN MEDICAL CARE**

Respondents hereby oppose petitioner Mohammed Bawazir's renewed emergency motion for preliminary injunction (dkt no.234), which seeks extraordinary judicial intervention into the manner in which medical professionals provide medical care intended to preserve petitioner's health at the United States Naval Base at Guantanamo Bay.

The Court has directed that respondents respond orally to petitioner's renewed motion at the upcoming status conference set for January 13, 2009. *See* Minute Order (Jan. 8, 2009). To facilitate discussion during the hearing, respondents hereby provide the Court with a brief synopsis of respondents' position as well as with an update concerning relevant legal and factual developments.

**BACKGROUND**

Litigation surrounding petitioner's involvement in various hunger strikes at Guantanamo Bay has been ongoing since September 2005. During this time, petitioner has filed three separate motions challenging the manner in which the medical staff at Guantanamo Bay administer care in order to preserve his life and health during his participation in prolonged hunger strikes. *See* dkt.

nos. 49, 68, 96.  In response to these motions, respondents provided the Court with a total of seven declarations from senior military and medical officials explaining the medical care provided to detainees participating in hunger strikes, with particular emphasis on the high-quality care provided to petitioner.  *See* dkt. nos. 52, 61, 69, 74, 97.  The declarations and briefs accompanying them established that the enteral feedings provided to petitioner were based on appropriate clinical rationales and practices designed to improve the overall health of hunger-striking detainees, and were performed in a humane fashion, with concern for the detainee, and never in a manner designed to inflict pain or discomfort or as punishment or retaliation.  *See id.*  On March 10, 2008, after the Supreme Court granted certiorari in *Boumedine v. Bush*, the Court denied petitioner's emergency motions without prejudice "until the Supreme Court has ruled definitively on the issue of this District Court's jurisdiction."  *See* Order (dkt. no. 122).

After receiving notice on January 7, 2009, that petitioner Bawazir resumed enteral feeding on November 18, 2008, petitioner filed a renewed motion requesting that this Court intervene into Guantanamo's provision of medical care to hunger striking detainees.[1]  Specifically, petitioner asks this Court to enjoin "use of a restraint chair when administering enteral feeding" and enjoin the practice of "inserting and removing the feeding tube each time Mr. Bawazir is force fed."  *See* Proposed Order.

---

[1] On January 7, 2009, counsel for respondents learned for the first time, and informed counsel for petitioner, that petitioner resumed enteral feeding on November 14, 2008. Respondents are attempting to determine circumstances that resulted in the notice requirement of the Court's October 25, 2005 Order (dkt. no. 50) being overlooked.  Further, pursuant to the requirements of that Order, respondents are currently in the process of gathering medical records for production to petitioner's counsel.

## **ARGUMENT**

Petitioner's renewed emergency motion should be denied for reasons explained in the briefs and declarations previously submitted by respondents in opposition to petitioner's various emergency motions seeking similar relief. *See* dkt. nos. 52, 61, 69, 74, 97. Respondents will not repeat those arguments again here, but highlight below primarily new points of fact and law that support denial of petitioner's motion

**1.** The Court lacks jurisdiction to consider petitioner's challenges to his conditions of confinement and the administration of medical care. Under 28 U.S.C. § 2241(e)(2), as added by the Military Commissions Act of 2006, a court may not exercise jurisdiction over any aspects of detention outside of the core habeas function, including "any aspect of the detention, transfer, treatment, trial, or conditions of confinement" of a Guantanamo Bay detainee. Under the recent decision in *Boumediene v Bush*, 128 S. Ct. 2229 (June 12, 2008), it is clear that this provision remains good law. The Supreme Court's decision in *Boumediene* held that the first part of section 7 of the Military Commissions Act, 28 U.S.C. § 2241(e)(1), is unconstitutional in some circumstances, but only insofar as it denies habeas review to detainees who have available to them only the Combatant Status Review Tribunal process and who raise a core habeas challenge, that is, one that challenges the legality of their *detention*. *See Boumediene*, 128 S.Ct. at 2269 ("The habeas court must have sufficient authority to conduct a meaningful review of both the cause for detention and the Executive's power *to detain*.") (emphasis added). *Boumediene* did not, however, invalidate the second part of section 7 – 28 U.S.C. § 2241(e)(2). Indeed, the Court expressly noted that it was not deciding whether Guantanamo detainees have a constitutional right to bring non-core habeas claims, such as conditions-of-confinement claims—one type of

claim barred by § 2241(e)(2). *See Boumediene*, 128 S.Ct. at 2274 ("[W]e need not discuss the reach of the writ with respect to claims of unlawful conditions of treatment or confinement.") Petitioner's claims in this case indisputably fall outside the *Boumediene* holding because they do not concern the core habeas function. Petitioner's motion does not challenge the legality of the petitioner's detention, but rather the ancillary issue of medical care and conditions of confinement.

The scope of the Supreme Court's decision and the plain language of the statute also have been apparent to other judges in this District. Indeed, three judges in this District already have concluded that *Boumediene* did not invalidate § 2241(e)(2). *See Khadr v. Bush*, No. 04-CV-1136, ___ F. Supp. 2d ___, 2008 WL 4966523 at *8-*10 (D.D.C. Nov. 24, 2008) (Bates, J.) ("Claims relating to 'conditions of treatment or confinement' fall squarely within the jurisdictional bar of section 2241(e)(2), and by excluding such claims from the scope of its analysis the Supreme Court appears to have left that subsection undisturbed."); *In re Guantanamo Bay Detainee Litigation*, No. 04-CV-01254 (HHK), 577 F. Supp. 2d 312, 313-14 (D.D.C. 2008) (Hogan, J.) ("[T]his Court, therefore, holds that § 7(a)(2) remains valid and strips it of jurisdiction to hear a detainee's claims that 'relat[e] to any aspect of the detention, transfer, treatment, trial, or conditions of confinement,' 28 U.S.C. 2241(e)(2)"); *In re Guantanamo Bay Detainee Litigation*, No. 05-CV-01509 (RMU), 570 F. Supp. 2d 13, 19 (D.D.C. 2008) (Urbina, J.)) ("And therefore, this court interprets *Boumediene* to invalidate only 28 U.S.C. § 2241(e)(1)."). The Court of Appeals recently confirmed that Congress intended to eliminate jurisdiction over such ancillary habeas and detention issues. *See Bismullah v. Gates*, 2009 WL 48149 (D.C. Cir. Jan. 9, 2008) ("[W]e think it clear the legislature's primary objective was to

curtail the detainees' access to judicial review by providing one form of review in lieu of habeas corpus or 'any other action.' MCA § 7(a).").

Notably, neither petitioner's original nor renewed preliminary injunction motions challenge respondents' authority to involuntarily feed petitioner in order to preserve and protect his life. Indeed, any such claim is entirely without merit. *See, e.g., Grand Jury Subpoena John Doe v. United States*, 150 F.3d 170, 172 (2d Cir. 1998). Instead, petitioner's motion improperly attempts to second guess the judgment of the medical authorities at Guantanamo Bay with respect to the precise manner in which enteral feeding is administered. Such a claim unquestionably falls within the scope of § 2241(e)(2) because it relates to petitioner's "treatment" and "conditions of confinement" at Guantanamo Bay. Consequently, the Court lacks jurisdiction to grant the extraordinary injunctive relief sought by petitioner.[2]

    **2.**    Even if the Court had jurisdiction to entertain petitioner's motion, petitioner has failed to meet his burden for a preliminary injunction.[3] As respondents have previously

---

[2] Nor does the All Writs Act, which provides that courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions," provide jurisdiction contrary to § 2241(e)(2). The All Writs Act "'confines [a court's] authority to the issuance of process 'in aid of' the issuing court's jurisdiction" and "does not enlarge that jurisdiction.'" *In re Tennant*, 359 F.3d 523, 527 (D.C. Cir. 2004) (quoting *Clinton v. Goldsmith*, 526 U.S. 529, 534-35 (1999)). As discussed above, this Court lacks jurisdiction to hear or consider a motion to alter petitioner's conditions of confinement. And because the All Writs Act does not expand that jurisdiction, petitioner cannot invoke it to obtain relief aimed at altering his conditions of confinement or medical care. *Id*. ("As this statutory language makes clear, the Act is not itself a grant of jurisdiction . . . . [T]he Act does not enlarge [] jurisdiction.") (citation and quotation marks omitted).

[3] Although the standards for a preliminary injunction are well-established in this Circuit, *see, e.g., Katz v. Georgetown Univ.*, 246 F.3d 685, 687-88 (D.C. Cir. 2001), the Supreme Court has issued two decisions since this Court received briefs from the parties emphasizing that the party moving for a preliminary injunction must establish, not just a "serious, substantial, [or] difficult" question that gives rise to "fair ground for litigation," but rather an actual likelihood of

demonstrated, the Joint Medical Group at Guantanamo Bay provides unconditional, appropriate, and comprehensive medical care to all detainees, including those, such as petitioner, participating in a hunger strike. *See* dkt. nos. 69, 74. The use of a restraint chair protocol for enteral feedings, modeled on the protocol utilized by the Federal Bureau of Prisons, was justified based on problems encountered in a prior protocol. *See* dkt. no. 74, Ex. 4. Guantanamo authorities had attempted to manage the hunger strike in a fashion that provided detainees the greatest autonomy and deference consistent with the need to provide them with nutrition and appropriate medical care. When it became clear that that system of managing the hunger strike was not being effective in maintaining the health of a significant number of detainees, including petitioner, and could not be continued without risks to the detainees' health and safety, Guantanamo continued its commitment to providing appropriate life- and health-saving care to detainees by implementing the use of the restraint chair system for enteral feeding. *Id.* Ex. 4, ¶¶ 4-16.

The restraint chair is not a form of punishment of or retaliation against detainees and is not used to deliberately inflict pain on them. Instead, it allows health care professionals at Guantanamo to provide the appropriate medical care and enteral feeding that is required to preserve the lives and health of hunger-striking detainees in a safe, efficient, humane, and effective manner. The current protocols associated with restraint chair enteral feeding are reiterated in a recent declaration from the current Joint Task Force Surgeon– Joint Task Force (Guantanamo). *See* Ex. A (Decl. of Capt. Bruce Meneley, filed with dkt. no. 50 in *Zuhair v.*

---

success on the merits, and further, the movant must "demonstrate that irreparable injury is likely in the absence of an injunction." *See Winter v. Natural Resources Defense Counsel*, 129 S.Ct. 365, 375 (2008); *Munaf v. Geren*, 128 S.Ct. 2207, 2219 (2008). Petitioner can make neither showing.

*Bush*, No. 08-cv-0864 (EGS)). As explained by Captain Meneley, the restraint chair enteral feeding protocol remains essentially the same as previously explained by respondents, although the time in restraint chair now typically is an hour or less. *See* Ex. A ¶¶ 13-14. Lubricant for insertion of the feeding tube is routinely provided. *Id.* Furthermore, contrary to the assertion of petitioner's counsel in this case, enteral feedings are administered appropriately and humanely by medical personnel, not guard force personnel.[4] *Id.* In addition, contrary to petitioner's counsel's assertion, unconditional, appropriate, and comprehensive medical care is provided detainees regardless of their participation in a hunger strike. *Id.* ¶ 7.

* * *

Accordingly, for the reasons explained above and as can be further explained at the upcoming status conference, there is no basis for the injunction petitioner's counsel seeks, and petitioner's renewed motion to enjoin use of a restraint chair during enteral feeding should be denied.

    Respectfully submitted,

    GREGORY G. KATSAS
    Assistant Attorney General

    JOHN C. O'QUINN
    Deputy Assistant Attorney General

---

[4] In some instances, guard force personnel are involved in moving uncooperative detainees from their cells to the restraint chair, but enteral feedings are administered by medical personnel.

   /s/ *Terry M. Henry*
JOSEPH H. HUNT (D.C. Bar No. 431134)
TERRY M. HENRY
ANDREW I. WARDEN
PAUL E. AHERN
PETER J. MCVEIGH
DAVID STANDER
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, DC  20530
Tel: (202) 305-0633