# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AHMED ZAID SALEM ZUHAIR<br>Petitioner<br><br>v.<br><br>GEORGE W. BUSH, ROBERT GATES,<br>REAR ADM. MARK H. BUZBY, and<br>ARMY COL. BRUCE VARGO<br>Respondents | )<br>)<br>)<br>)<br>)   CIVIL ACTION<br>)   NO. 08-CV-0864 (EGS)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

DECLARATION OF CAPTAIN BRUCE C. MENELEY, M.D.

Pursuant to 28 U.S.C. § 1746, I, Bruce C. Meneley, M.D., hereby declare:

1. I am a Captain in the United States Navy and with over 32 years of active and reserve service. I currently serve as the Commander, Joint Medical Group, Guantanamo Bay and Joint Task Force Surgeon, Joint Task Force – Guantanamo (JTF-GTMO), at Guantanamo Bay, Cuba. I am responsible for the medical care provided to personnel stationed at Guantanamo Bay and oversee the operation of the Joint Medical Group that provides medical care to the detainees being held at Guantanamo Bay. There are currently approximately 260 detainees being held at the detainee camp at Guantanamo Bay, Cuba. I have served in this position since July 6, 2007.

2. I received my medical degree from the University of Nevada, School of Medicine. I completed an Internship at Naval Hospital Bremerton and a Residency in Emergency Medicine at Naval Medical Center San Diego.

3. I have personal knowledge of the procedures that are in place for the operation of the Detention Hospital and I am responsible for ensuring that they are followed. Due to my

responsibilities, I have personal knowledge of, or have received information concerning the allegations made by ISN 669 (Ahmed Zaid Salem Zuhair, the petitioner in the above-captioned case) through his counsel. This declaration is based on information made available to me through my official duties and from the medical records of ISN 669.

## JOINT MEDICAL GROUP BACKGROUND

4. The Joint Medical Group staff consists of licensed, board-certified physicians of different specialties. Specifically as of August 2008, the hospital staff consisted of 116 professionally trained individuals. This staff included an anesthesiologist, a general surgeon, an orthopedic surgeon, family physicians, internal medicine physicians, a psychiatrist, a psychologist, a physician's assistant, a licensed dietician, dentists, and a physical therapist. In addition, the staff included licensed medical/surgical nurses, corpsmen (formally trained Navy medical personnel akin to a "medic" in the Army), various technicians (lab, radiology, pharmacy, operating room, respiratory, physical therapy, information technology and biomedical repair), and administrative staff. We have routinely brought down specialists in Dermatology, Cardiology, ENT, Gastroenterology, Neurosurgery, Urology, and Audiology to name a few. Any specialty required is available. Other specialists specifically involved in the care of the detainees on hunger strike include nutritionists, internal medicine and behavioral health professionals, all of whom assisted in monitoring and providing specialized care, as needed.

5. All detainees, upon arrival at Guantanamo Bay, are given a complete physical examination. Medical issues identified during the examination, or identified during subsequent examinations, are followed by the medical staff. Detainees may request medical care at any time by making a request to guard personnel in the cell blocks or to the medical personnel who make daily rounds on each cellblock. In addition to responding to such detainee requests, the medical

staff will investigate any medical issues observed by JTF-GTMO guards or staff. The availability of this care has resulted in thousands of outpatient contacts between detainees and the medical staff, followed by inpatient care as needed.

6. Outpatient healthcare provided to the detainees is done at the medical facility in the detention camps as well as the Detention Hospital. Inpatient medical care is performed primarily in the Detention Hospital. The Detention Hospital is a 20-bed facility that is comparable to a small community hospital in the United States. For medical procedures beyond the capability of the Detention Hospital, the detainees are transferred to the Naval Base Hospital at Guantanamo Bay. As noted above, we can and have requested that specialists be flown in to provide care to detainees when the medical need warrants it.

7. The Joint Medical Group is committed to providing unconditional appropriate comprehensive medical care to all detainees regardless of their disciplinary status, cooperation, or participation in a hunger strike. The healthcare provided to the detainees being held at Guantanamo Bay rivals that provided in any community in the United States. Detainees receive timely, compassionate, quality healthcare and have regular access to primary care and specialist physicians. The care provided to detainees is comparable to that afforded our active duty service members. All medical procedures performed are justified and meet accepted standards of care. A detainee is provided medical care and treatment based solely on his need for such care and the level and type of treatment is dependent on the accepted medical standard of care for the condition being treated. Diagnosis of such conditions and medical care and treatment for them are not affected in any way by a detainee's cooperation, or lack thereof, during an interrogation session. Similarly, medical care is not provided or withheld based on a detainee's compliance or noncompliance with detention camp rules or on his refusal to end a hunger strike. Medical

3

decisions and treatment are not withheld as a form of punishment. Additionally, the medical staff have no involvement in discipline decisions made by detention personnel.

## ALLEGATIONS MADE BY ISN 669

8.  Through his attorney, ISN 669 claims that he "has been subjected to an increasingly brutal force-feeding regimen." According to ISN 669, this regimen involves ISN 669 being strapped to a six-point restraint chair for four hours per day, and having a feeding tube "shoved" into his nose and down into his stomach. ISN 669 further asserts in his motion that "these force feeding procedures are unnecessarily brutal and do not serve any legitimate medical purpose." As described below, these claims are inaccurate.

9.  ISN 669's motion also alleges that Guantanamo medical personnel have refused to diagnose or treat ISN 669 for a number of ailments, including severe kidney pain, a burning sensation during urination, inflammation of the nerves in the spinal cord, a swollen knee and ankle and a painful hemorrhoidal condition that leaves blood in his feces. ISN 669 asserts in his motion that Guantanamo medical personnel have predicated provision of medical treatment on ISN 669 ending his hunger strike. As described below, these allegations are untrue. In fact, his medical records document extensive and ongoing medical evaluations and follow-on treatment, including 61 radiologic imaging studies and 370 laboratory studies.

10.  Contrary to ISN 669's contention in his motion that medial staff is denying him proper medical care in an effort to break his hunger strike, we do not withhold, nor do we condone the withholding of medical care as a form of punishment. The Joint Medical group has no involvement with detention or discipline issues.

## ISN 669'S MEDICAL HISTORY

4

11. ISN 669's date of birth is 16 October 1965. He arrived at Guantanamo Bay in June 2002. At arrival he was in good general health, weighing 149 pounds with no complaint of any chronic medical condition. No pre-existing diagnoses were listed on his inprocessing physical examination. In August 2002, soon after arrival, he was evaluated by mental health and given a diagnosis of depressive disorder with psychotic features, based on his report of auditory/visual hallucinations of his family as well as depressed mood and hopelessness in the context of his detention. Zoloft and Zyprexa were prescribed. On follow up later that month, he reported no further hallucinations; he stated to the psychiatrist that he had no mental health problems, and the psychiatrist must have made a "mistake." The diagnosis was changed to Depressive Disorder, Not Otherwise Specified. He refused the medications, and they were discontinued. By November 2002, he was not consistently demonstrating any depressive or other psychiatric symptoms, and his depressive disorder was considered resolved. He was discharged from the Behavioral Health Service.

**HUNGER STRIKE PROTOCOLS**

12. It is the policy of the Department of Defense to support the preservation of life by appropriate clinical means, in a humane manner, and in accordance with all applicable standards. Medical professionals administer enteral feeding for hunger striking detainees in a humane and compassionate manner, and do so only when it becomes medically necessary to preserve a detainee's health. Detainees are designated as hunger strikers after missing nine consecutive meals. The medical staff carefully assesses each hunger-striking detainee's health by means of physical and psychological examinations, weight monitoring, personal observation and laboratory tests. When the preservation of health and life becomes necessary, a recommendation for enteral feeding is made to the Commander of the Joint Task Force, who then orders the

5

necessary enteral feedings. Joint Medical Group personnel provide extensive counseling and detailed warnings to the detainees concerning the risks of failure to eat or drink when they begin a hunger strike, prior to commencing involuntary feeding, and periodically thereafter, if the detainee continues to participate in the hunger strike. Medical personnel (including behavioral health professionals) continually remind detainees who persist in their hunger strike that continuation of the hunger strike could endanger their health or life.

13. JTF-GTMO follows the Federal Bureau of Prisons' model for managing hunger strikers. The Joint Detention Group is responsible for escorting a detainee to the feeding chair and appropriately placing them into the chair. A restraint chair is utilized to ensure the safety of the guard staff, medical staff, and the detainee. A detainee is only kept in the chair for the time required to administer a feeding and for a short, informal observation period of 10-15 minutes after the feeding is completed to prevent the detainee from purging. This process normally lasts less than an hour. Detainees are typically fed twice daily.

14. Prior to any enteral feeding guard staff offer the detainee a meal to eat. Detainees are also offered and encouraged to use the bathroom. A lubricant is always used, typically viscous lidocaine, although we allow them to choose alternative lubricants if they desire. In all cases a topical anesthetic such as lidocaine is available, however, a patient may decline the anesthetic. An enteral feeding tube is introduced by a registered nurse by standard medical protocol to accepted medical standards. Cepacol anesthetic lozenges are available to the detainees on request. After verification of tube placement, an appropriate amount of Jevity nutritional supplement is infused by gravity into the detainee's stomach, at which time the tube is then removed. This process typically takes 30 to 40 minutes. During this time medical staff

6

periodically check the detainee's circulation in their arms and legs to ensure they have not been restrained too tightly.

### ISN 669'S HUNGER STRIKE

15. ISN 669 began his hunger strike on 15 August 2005 and at present continues to refuse meals. As discussed above, Detainees are designated as hunger strikers after missing nine consecutive meals. In accordance with JTF-GTMO policy discussed above, ISN 669's enteral feedings began when it becomes medically necessary to preserve his health. He has been enterally fed continuously since August 2005.

16. ISN 669 is currently being enterally fed twice per day. Guard staff provide him with bottled water and running water is available in his cell. Detainees are currently fed in a common area in front of their cells in restraint chairs. As noted above, detainees are fed using the restraint chair in accordance with JTF-GTMO standard operating procedure to ensure safe and expeditious performance of the procedure. A sampling of ISN 669's records indicates the usual duration of his feeding times to be between 35 and 55 minutes. Given two feedings per day, the ISN 669 is being enterally fed for approximately 70 to 110 minutes per day, not the four hours claimed in his motion. This time frame does not, however, include the time it might take for the guard staff to place him into and remove him from the restraint chair and medical staff to insert and remove the tube. Because of his long term cooperation with the procedure the guard staff only applies wrist, ankle, and a lap/shoulder restraint. The guard staff is not currently using the head restraint, meaning only five of the six restraint points are actually being used.

17. ISN 669's medical records indicate no history of purging after enteral feeding. As is true with all hunger striking detainees, Behavioral Health has evaluated ISN 669 since day one of his hunger strike and follows up with him on a weekly basis as his hunger strike continues. As

7