is true of all detainees on hunger strike, ISN 669 has been encouraged to end his hunger strike for the sake of his health. No behaviors warranting further mental health evaluation have been identified by Behavioral Health, nor has ISN 669 been diagnosed with a mental illness. His weight has remained largely stable over the past 3 years ranging from 137 pounds in 2005 to 152 pounds in 2007 to 136 pounds today. His current weight as of 13 August 2008 is 136 pounds. The enteral feeding is helping the detainee maintain his body weight. ISN 669's Ideal Body Weight is 143 pounds. As he is receiving adequate total nutrition through enterally feeding, no additional medical steps or measures to respond to his hunger strike are required.

18. By ISN 669's long standing request, olive oil is used as a lubricant rather than viscous lidocaine. This is an acceptable alternative for lubrication. This request by ISN 669 is not for religious reasons. He has never expressed any discomfort to the staff during this procedure. Several other detainees being fed at the same time and location as this detainee use the Cepacol lozenges, but ISN 669 has never requested any lozenges and has declined when offered them. Prior to inserting the enteral feeding tube, medical staff perform a general check to ensure the detainee does not have any problems with congestion or nasal passage blockage. Nasal passages are also evaluated as part of routine health check-ups. ISN 669's records do not provide any indications he has complained of blocked nasal passages to the staff.

19. Of the 370 above-mentioned laboratory studies conducted on ISN 669, 308 of those studies were conducted since he began his hunger strike.

### ALLEGATIONS OF KIDNEY PAIN

20. As noted above, ISN 669 claims in his motion that Guantanamo medical personnel have refused diagnosis and treatment, including urinalyses and ultrasounds, for his severe kidney pain and painful urination. This is untrue. JTF-GTMO medical personnel have

8

responded appropriately when ISN 669 has brought kidney and urination problems to their attention. ISN 669's urinary tract issues are not associated with his hunger strike. He has continued to drink water since his hunger strike began. Regardless of his status as a hunger striker, no other monitoring of his urinary tract, other than what is already being done as describe below, is necessary.

21. ISN 669 first complained to medical staff of left sided low back pain with painful urination on 11 August 2003. ISN 669 was evaluated by a physician who prescribed appropriate antibiotics and pain medications after noting blood in ISN 669's urine with an elevated white blood cell count. This is standard medical protocol when such symptoms are reported by patients and such test results are produced. After that treatment, ISN 669 made no complaints of recurring back or kidney pain until 24 September 2003 when he complained of mild pain during urination. A urinalysis on 24 September 2003 was normal with no sign of blood or infection in the urine sample collected. When a detainee has a normal urinalysis and negative urine culture, no treatment is normally prescribed.

22. On 10 November 2003, ISN 669 complained again of painful urination with blood visible in his urine. A urine sample confirmed the presence of blood and ISN 669 was diagnosed by medical staff with a left sided kidney or ureteral stone. A helical CT of the abdomen and pelvis was performed indicating no evidence of any stones within the kidneys and a small area of possible stone formation 3mm x 4 mm in diameter at the ureteralvesicular junction. Based on these findings and consistent with the standard of care for such a condition, ISN 669 was prescribed pain medications. When a second CT scan was performed, no stone was detected, indicating that the stone had passed on its own. At the time of this CT scan, ISN 669 was no longer experiencing pain. ISN 669 was seen by a urologist in December 2003 who repeated

imaging of kidneys and ureters with an X-ray and saw no evidence of any stones. A urinalysis showed no indication of any bleeding or infection in ISN 669's urine. The urologist assessed his pain level to be 0/10. At that point, medical staff assessed this medical condition to be resolved.

23. ISN 669 had no further complaints of any painful urination or blood in his urine until April 2004 when he again complained about painful urination and a urinalysis indicated blood in the urine. Guantanamo medical staff prescribed an appropriate antibiotic regimen and a re-imaging X-ray indicated no recurring stone. ISN 669 was diagnosed with a urinary tract infection. ISN 669 refused to take his prescribed antibiotic medication after one day.

24. In July 2004, ISN 669 complained again of painful urination. A urinalysis indicated blood and infection in his urine. An appropriate antibiotic course was restarted which resolved the symptoms. A follow up urinalysis check conducted in August 2004 was normal with a normal urine culture as well.

25. Urinalyses were checked 5 times between August 2004 and January 2005 and all were within normal limits with normal urine cultures. During this time period, ISN 669 complained of feeling tingling or mild pain while he urinated and these tests were conducted to be sure no recurrence of renal stones had occurred. Between January 2005 and March 2007 there were no documented urinalysis checks or complaints by ISN 669 of painful urination.

26. ISN 669 made no further complaints of painful urination or kidney pain until March 2007 when he again complained of painful urination. A urinalysis and urine culture were checked to be normal. Five urinalyses checks, all within normal limits, were recorded for ISN 669 in 2007.

27. ISN 669 again complained of painful urination in January 2008 together with kidney pain on both sides. Urinalysis and urine culture were within normal limits with no sign of

infection. A physical examination by medical provider indicated no sign of gross infection. As noted above, when a detainee has a normal urinalysis and negative urine culture, no treatment is normally prescribed.

28. In March 2008, ISN 669 again complained of pain in his kidney (left side greater than right). He was seen by a medical provider who conducted an examination found to be normal and his urinalysis and urine culture were normal with no sign of any infection. The medical provider diagnosed ISN 669 with mechanical low back pain, meaning uncomplicated pain in the lower back caused by normal, everyday movement. Over-the-counter pain medications are typically recommended for such a diagnosis. In 2008, two urinalysis and urine cultures were performed on separate visits both normal with no sign of any infection. The date of ISN 669's most recent urinalysis was 17 March 2007.

29. Contrary to ISN 669's allegations in his motion that medical staff refused to perform urinalyses and ultrasounds, a total of twenty nine urinalyses are documented in ISN 669's medical records from June 2002 to the present. Of those, 23 urinalyses were performed with a urine culture and 6 urinalyses were performed without a urine culture. A helical CT scan of ISN 669's abdomen and pelvis was performed in November 2003. Helical CT scans have largely replaced renal ultrasound as a better imaging technique for renal stones. In addition, three documented KUB abdominal / pelvic X-rays have been performed on ISN 669 to document the presence and absence of kidney and ureteral stones. JTF-GTMO medical staff's treatment of ISN 669's urinary tract problems was medically appropriate and within the standard of care for such conditions.

**ALLEGATIONS REGARDING GOUT**

11

30. Although ISN 669's motion suggests he may be suffering from chronic gout, in reviewing ISN 669's medical records, I have found no complaints compatible with acute or chronic gout. My records review identified no recurring severe joint pain syndrome. ISN 669's uric acid levels, which, if elevated, would serve as an indicator of gout, were checked on 16 November 2003. The uric acid levels were found to be within normal ranges. This test will be repeated if medically indicated in the future.

## ALLEGATIONS REGARDING BACK PAIN

31. ISN 669 has been diagnosed uncomplicated low back pain and been evaluated for the condition on several occasions. Although ISN 669 alleges in his motion that this back pain was not treated, he has, in fact, been prescribed appropriate medications and has been consulted to Physical therapy to help with mild intermittent low back pain. He has been prescribed several pain medications to include Celebrex, Mobic, capsaicin cream topical and Ultram in addition to other NSAIDs for his back pain. He was seen by physical therapy on several occasions in 2003 to help him with exercises to relieve chronic low back pain. As a result of the prescribed medication and the therapy, ISN 669's back pain showed improvement. A CT scan of ISN 669's cervical spine in April 2003 showed a mild spinal canal narrowing at cervical spine C-7 causing the detainee no clinical symptoms. An X-ray of his cervical spine in August 2003 was normal. An X-ray of his lumbar sacral spine in August 2008 was normal as well.

32. ISN 669 has been evaluated for complaints of bilateral knee and ankle swelling and pain on multiple occasions, again contrary to the allegations contained in his motion. Orthotic shoe supports and special medical athletic shoes have been provided to him. Orthopedic surgery has consulted with him on multiple occasions each time indicating no orthopedic surgery on the joint was required. Orthopedic consultants have never concluded that

a brace is indicated for his ankle condition, which has been diagnosed as mild left ankle laxity. Instead, Orthopedics referred ISN 669 to Physical Therapy to help with ankle strengthening exercises. Physical therapy has seen him on multiple occasions beginning in March 2003 to help him with chronic joint pains in his back, ankles and feet. In October 2006, he was seen again by to help with stretching exercises to address his complaint of foot pain thought to be plantar fasciitis. He is not currently being seen by Physical Therapist and his last appointment was in November 2007. Physical therapy has resolved his symptoms somewhat. He still complains occasionally of mild recurring pain in his ankles, knees, hips and back and continues to take Ultram medication daily for chronic recurring mild joint pains. ISN 669's ankles have been X-rayed eight times between January 2004 and August 2008, with the last X-ray of the right ankle evaluated as normal August 2008. ISN 669's knees have been X-rayed six times between December 2003 and August 2008, with the last X-rays of the right knee evaluated normal August 2008.

### ALLEGATIONS REGARDING NON-USE OF ANESTHESIA

33. ISN 669 has claimed in his motion that medics refused to use anesthesia while stitching a wound on his face. The common medical practice used at the JTF-GMTO Detention Hospital calls for numbing of wound edges prior to use of sutures. Two separate events (in April 2003 and in January 2007) are documented in the medical record which resulted in lacerations to ISN 669's face or head requiring sutures to close the wounds. Our medical records state that these lacerations occurred during scuffles with guard staff. For both events, medical records document medical staff using 3-4 ml of injectable lidocaine anesthetic agent to numb the wound edges before sutures were applied.

### ALLEGATIONS REGARDING HEMORRHOIDS

13

34. Despite the claim in his motion that Guantanamo medical staff refuses to treat him for hemorrhoids, ISN 669 has been evaluated on multiple occasions for chronic external hemorrhoids and anal fissure. In January of 2007, he was evaluated by a consulting general surgeon who made a diagnosis of anal fissure. Appropriate medical therapy was prescribed for this long term chronic condition. ISN 669 had three followed up evaluations in 2007 for hemorrhoid issues, including a consultation by a general surgeon who recommended a colonoscopy to better assess ISN 669's rectal bleeding complaint. ISN 669 declined to have this procedure performed. ISN 669 was last seen by a medical provider for his hemorrhoid condition in March 2008 and was prescribed appropriate topical therapy. ISN 669 declined an offer of a follow up consultation with the general surgeon.

### ALLEGATIONS REGARDING A BROKEN FINGER

35. Exhibit 1 to ISN 669's motion contends that guard staff in an "Initial Reaction Force" (IRF) team broke his left index finger when they pulled it all the way back. However, there is no evidence in ISN 669's medical record of a broken finger. Only two complaints from ISN 669 of pain in the digits of the hand have been recorded. In March 2004, an X-ray was performed after the detainee struck a guard with no fractures noted. In August 2008, X-rays were again performed on the right hand after a forced cell extraction with no sign of any bony fracture noted.

### ALLEGATIONS REGARDING IMPROPER IV INSERTION

36. Upon appropriate medical indications, and on the orders of a medical officer, intravenous needles are introduced into a patient's veins by the medical staff applying standard medical procedures for infusing intravenous fluids. On occasion, they may be unable to place the needle into the vein on the first attempt and must reinsert the needle. Detainees are never

14

intentionally stabbed in a muscle as medical personnel are trying to start an IV. Nothing in ISN 669's medical records indicates that an IV was improperly inserted, as he alleges in his motion.

### ISN 669'S REFUSAL OF MEDICAL TREATMENT AND TESTING

37. While ISN 669's motion contends that he has been continually denied treatment for various ailments, ISN 669 has, in fact, on numerous occasions, declined to take prescribed medications, declined procedures recommended by consulting specialists, declined physical therapy appointments, and declined laboratory studies. A sampling of these instances are included below.

38. As early as October 2003, it has been documented that ISN 669 declined to take an antibiotic prescribed to him after he had complained of symptoms compatible with bacterial pharyngitis. This drug was not administered without his consent.

39. In April of 2004, as described above, ISN 669 declined to take antibiotic prescribed for his complaint of painful urination with a urinalysis indicating a urinary tract infection. His failure to comply with therapy resulted in progression of his symptoms until he complied with antibiotic therapy in July of 2004.

40. In August 2005, ISN 669 declined medication for gastroesophageal reflux syndrome making diagnosis of recurring abdominal complaints more difficult.

41. In November 2007, as described above, ISN 669 declined a colonoscopy to help the general surgeon better assess the cause of recurring rectal bleeding,

42. In April 2005, ISN 669 declined a Physical Therapy consultant appointment.

43. In April 2007, he declined to be seen by a visiting orthopedic specialist.

15

44. In July of 2007, he requested a back brace for back pain from a corpsman. In response to this request, medical staff scheduled a medical appointment for him to diagnose the back pain. ISN 669 later refused to attend that scheduled appointment.

45. In November 2007, he declined an appointment with a medical officer to reassess his complaint of foot pain.

46. In April 2008, a medical officer also documented that ISN 669 refused to be seen for an annual medical review.

47. Throughout his detention, ISN 669 has on occasion declined to allow blood work to be drawn or urinalysis to be performed to confirm our diagnoses.

### ISN 669'S CURRENT HEALTH

48. ISN 669 is currently in good health with no significant medical problems. He now weighs 136 pounds and his weight has remained stable since his hunger strike began. He exercises and participates in recreation with other detainees. He routinely goes outside his cell every day for recreation. His joint aches are intermittent and mild, not limiting his ability to perform all activities of daily living.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true, accurate and correct.

Dated: 22 August 2008

BRUCE C. MENELEY
Captain, Medical Corps, U.S. Navy

16